IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>PLAINTIFF, | : | |
| v. | : | CASE NO. 1:22-cr-00023-WES |
| JEAN RICHARD AUDATE<br>DEFENDANT, | : | |

**DEFENDANT JEAN AUDATE'S SENTENCING MEMORANDUM**

Comes now, Jean Audate, by and through counsel, submits this sentencing memorandum in support of his request for a sentence of incarceration of sixteen months (16) and a day. The sentence requested is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). For the reasons set forth below, Mr. Audate submits that the requested sentence conforms to this standard and we respectfully request that this Court sentence him accordingly.

## INTRODUCTION

Jean Audate committed a crime. Jean Audate helped defrauded several people of tens of thousands of dollars. Regrettably, at the time he committed these crimes, Jean Audate did not fully appreciate the seriousness of the actions he took or how his actions would cause economic turmoil for the victims of the fraudulent scheme he partook in.

While the overall theme of this case can be described as greed, it is a label which does not exactly fit Jean Audate [hereinafter, "Mr. Audate"]. Mr. Audate was not the mastermind of this fraudulent scheme, instead Mr. Audate was introduced to this fraudulent scheme by a co-conspirator – who happened to be a family member (a cousin) – with the promises of "easy money" by Audate picking up and delivering packages of money. In a sense, Mr. Audate was a "mule" that furthered the acts of the conspiracy.

Not to diminish the impact and pain that Mr. Audate's actions have caused, but this case presents an individual (Mr. Audate) with no prior criminal history, who acted as a low-level member of a conspiracy to defraud, a conspiracy in which no other arrests have been made (to

defense counsel's knowledge. A conspiracy in which Mr. Audate, who has taken responsibility for his actions, is the only person to date who has been held accountable.

Defense counsel submits that Mr. Audate's participation in this fraudulent scheme does warrant a sentence that includes a period of incarceration, which is certainly reasonable. But that it is also reasonable that a sentence of sixteen months, which is outside the advisory sentencing guidelines range, is sufficient, but not greater than necessary to achieve the goals of 18 U.S.C. § 3553(a). Moreover, defense counsel submits that the request for sentencing set forth herein are sufficient and not greater than necessary when compared to recently decided cases concerning similarly situated defendants.

## I. FACTUAL BACKGROUND

Mr. Audate was born and raised in New York City, and graduated high school in Jamaica, New York. As the pre-sentence report ("PSR") reflects, Mr. Audate's biological father was not a part of his upbringing but between his brother and his stepfather, he had strong positive paternal influences on him growing up. Mr. Audate's mother has also been a strong influence on his upbringing and the strong influence remains today. Due to these strong bonds with his immediate family, loyalty is a strong characteristic of Mr. Audate – even misguided loyalty with respect to his cousin, who introduced the fraudulent scheme to Mr. Audate.

Between the influences and successes of Mr. Audate's sibling (and half siblings), he successfully completed a Bachelor of Science degree in Marketing from St. John's University in 2010. This achievement did not come without a price, however. A combination of stress due to family turmoil involving Mr. Audate's biological father along with the economic downturn in 2010 – and the inability to find meaningful employment following graduation from St. John's – Mr. Audate suffered a mental break and was hospitalized for a period of two weeks at a New York hospital. Regrettably, Mr. Audate did not return to treatment nor take the medications as prescribed, even though he would later (September 2022) be diagnosed with adjustment order, depression, anxiety, and obsessive compulsive disorder.

Naturally an introvert and uncomfortable in certain social settings, Mr. Audate retreated to spending a majority of his time participating in online gaming. Despite having a college degree, Mr. Audate was unable to secure employment in a field in which he received his degree and worked instead sporadically in retail and construction. The combination of his sense of failure, his mental

health challenges, and his financial situation, Mr. Audate was an easy target to participate as a mule for the fraudulent scheme involving his predatory and more sophisticated family member (his cousin).

## II. PROCEDURAL BACKGROUND

On February 23, Mr. Audate pled guilty to one count of Conspiracy to Commit Mail Fraud, 18 U.S.C. §§ 1349 and 1341, three counts of Mail Fraud, 18 U.S.C. § 1341, and one count of Aggravated Identity Theft, 18 U.S.C. § 1028A. The Aggravated Identity Theft charge was subsequently dismissed by the government in August 2023. Each of the remaining counts in which Mr. Audate pled guilty to are non-violent crimes, but crimes, nonetheless. The total fraud loss perpetrated by Mr. Audate and the co-defendants amounted to $1,284,249 and the actual restitution owed is $867,149.

Mr. Audate entered into a plea agreement with the US Government whereby he accepted responsibility for the above-referenced offenses and has agreed to pay restitution to the victims for the ill-gotten gains. Mr. Audate is now set for sentencing on February 28, 2024, before this Court.

In anticipation of sentencing, the United States Probation Office prepared a Presentence Report ("PSR"). In the PSR, the probation office calculated a total offense level of 20 and a criminal history category of I, with an advisory sentencing range under the Guidelines of 33 to 41 months. (PSR at ¶ 73).

While there are no objections to the PSR, defense counsel submits that an adjustment for Mr. Audate's minimal role in the fraud scheme, along with the unique facts of this case, when applied to the sentencing factors outlined in 18 U.S.C. § 3553(a), warrant a sentence of sixteen months incarceration.

## III. SENTENCING DISCUSSION

### A. Relevant Law

As this Court is well aware, in *United States v. Booker*, the United States Supreme Court struck down the provisions of the Federal Sentencing Act that made the federal sentencing guidelines mandatory. 543 U.S. 220, 250-60 (2005). "The statute, as modified by Booker, contains an overarching provision instructing courts to impose a sentence sufficient, but not greater than necessary, to achieve the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101

(2007) (internal citation omitted). These purposes include sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other corrective treatment. 18 U.S.C. § 3553(a)(2).

Furthermore, the Court should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). "Underlying this tradition is the principle that the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011). Consequently, for "the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offenses together with the character and propensities of the offender." *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937).

Each of these factors indicates the need to grant a variance from the advisory sentencing guideline range and for the Court to impose a sentence of sixteen months incarceration where Mr. Audate, will also feel the effects of a federal felony conviction much less the collateral consequences for the rest of his life.

### B. The 18 U.S.C. § 3553(a) Factors Warrant a Sentence of 16 Months Incarceration

Although a court begins its sentencing determination by considering the Sentencing Guidelines, "[t]he Guidelines are only *not mandatory* on sentencing courts; they are also *not to be presumed reasonable*." *Nelson v. United States*, 555 U.S. 350, 352 (2009) emphasis added (per curiam). "[T]he sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Id.* Accordingly, each of the relevant factors identified in 18 U.S.C. § 3553(a) include: (1) the nature and circumstance of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed, (3) the kinds of sentences available, (4) the Sentencing Guidelines, (5)

the Guidelines' policy statements (6) disparity with similar offenders, and (7) the need to provide restitution to the victims of the offense.

### (i) The Nature and Circumstances of the Offense

The Final Presentence Investigation Report ("PSR") provides an explanation of the offenses and Mr. Audate does not contest the findings within the PSR. Without limiting Mr. Audate's full acceptance of responsibility in any way, he clearly committed mail fraud by picking up and delivering packages containing money in furtherance of a conspiracy to deprive victims of their savings. All of this is true and he has admitted to the fraud.

Mr. Audate, however, was not the mastermind of this scheme and was arguably the lowest person in the fraudulent activity. He had no direct communications with any of the victims, much less any threats of violence towards the victims. As Mr. Audate's role in the fraudulent scheme was akin to a mule, he did not receive any significant financial benefit for his role, but instead received a small percentage of the ill-gotten gains, despite in some respects he shouldered much of the risks involved. This is attributed to the fact that the scheme was set up in a way in which the co-conspirators at the top were somewhat shielded from exposure due to the use of aliases, the use of encrypted telecommunications, and the fact that some of the co-conspirators are located outside the United States.

Defense counsel and Mr. Audate certainly understand and concede that Mr. Audate's involvement in this conspiracy to commit mail fraud makes him liable for the natural and unintended consequences of the other co-conspirators, including the actual fraud loss as a result of the scheme. However, taken together, the nature and circumstances of Mr. Audate's actions as a minor or low-level member of the conspiracy justify a downward adjustment for his role as a minimal participant.

### (ii) Mr. Audate's History and Characteristics

As the PSR notes, prior to this case, Mr. Audate has no criminal history. He is a bright young man who has some mental health challenges and was preyed upon to engage in the fraud scheme and despite knowing right from wrong, he went down a path which led to the predicament that he now faces.

An introvert by nature, he spends a majority of his time by himself and in gaming platforms. He also works to support himself with the understanding that he is responsible for restitution for the numerous victims in this case. Now a convicted felon, he remains steadfast in trying to re-purpose himself to become a better person and to pay back the restitution to the victims he defrauded. He has faced the music so to speak and accepts that he will be sentenced for his role in the fraudulent scheme.

While it is true that Mr. Audate is presently detained as a result of a new indictment in the United States District of Vermont – despite multiple attempts to obtain information related to the new indictment – defense counsel cannot intelligently comment on the facts or dates that have given rise to the new charge.

The letters of support by persons who know Mr. Audate, acknowledge that while they are shocked by his fraud conviction, they know that he is not the monster that his actions belie. One example gives details of how Mr. Audate helped a neighbor in need, while another describes that Mr. Audate is remorseful for his actions and his wanting to make things right.

**(iii) The Need for the Sentence Imposed**

Section 3553(a) instructs the Court to consider the need for the sentence imposed and to evaluate whether a guideline sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, protects the public from further crimes, and provides the defendant with the needed educational or vocational training, medical care, and other correctional treatment in an effective manner. *See* 18 U.S.C. § 3553(a)(2). In this case, these factors weigh in favor of a sentence of home confinement.

In this case, a Guidelines sentence is not required to deter others like Mr. Audate. A sentence of sixteen months incarceration – a significant restriction on Mr. Audate's liberty – would achieve the goal of deterrence because the fact remains that Mr. Audate was a first-time offender who had a low-level role in the scheme, and that he will be sentenced to a term of incarceration for his participation in the scheme. A sentence of sixteen months incarceration demonstrates to the public at large that fraud of this sort and similarly situated defendants engaging in elderly fraud will be prosecuted to the full extent of the law – deterring any would-be offenders from participating in a similar scheme.

To be sure, Mr. Audate has already paid a significant price for his conduct, and the prospect of incarceration is a certainty. Mr. Audate's job prospects were slim before his participation in this fraud scheme – which were an issue of consternation for Mr. Audate – and it is likely that he will never be able to work in a career field in which he devoted years of schooling to achieve. These penalties are not insignificant and should sufficiently deter other similarly situated defendants.

**(iv) The Kinds of Sentences Available**

Congress has stated that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of nonviolent and nonserious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service." *See* Pub L. No 98-473 § 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. § 3551 note).

Neither counsel nor Mr. Audate seek in any way to diminish the gravity of the instant offense. But Mr. Audate submits that sixteen months incarceration along with supervised release and restitution is sufficient but not greater that necessary to achieve the objectives as defined in 18 U.S.C. § 3553(a). He is not a violent individual, nor he does not pose a threat to anyone or society. He certainly is not a criminal mastermind or sophisticated enough to engineer a fraudulent scheme on his own. The advisory sentencing guidelines range of 33 to 41 months is more appropriate for violent offenders, career criminals, and unremorseful individuals. None of these adjectives apply to Mr. Audate.

**(v) The Need to Provide Restitution**

Mr. Audate fully intends to repay every single dollar of the restitution that is owed. Despite "only" receiving a percentage of the actual monies that was obtained in the fraudulent scheme and being the only co-conspirator that has been charged, Mr. Audate desires to make things right and pay back the full amount of the restitution that is owed. To this extent, a longer term of any BOP

incarceration beyond sixteen months will only serve to delay his ability to finish paying off the debt.

### (vi) Unwanted Disparity with Similar Offenders

A downward variance from the Guidelines sentence range would not create a disparity with similar offenders: it would, in fact, promote uniformity when compared to several highly relevant, similar offenders/sentences. Indeed, in 2018, courts across the country imposed a sentence on a defendant convicted of fraud/theft/embezzlement that varied from the Guidelines' range 34.8% of the time. *See* U.S.S.G., Statistical Information Packet Fiscal Year 2018, Table 10 (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2018/1c18.pdf). Within the First Circuit, persons convicted of fraud/theft/embezzlement varied from the Guidelines' range 42.2% of the time. In other words, courts frequently sentence defendants outside the range recommended by the Guidelines.

In looking at cases within Rhode Island that would be useful comparators to Mr. Audate's case (with respect to "grandparent scams" via mail or wire fraud), one that comes to mind is *United States v. Hatcher, et al*, 1:21-cr-00071-WES-PAS, a case that was recently disposed of by the Court. In *Hatcher*, two of the co-defendants participated in a "grandparent scam" whereby they admitted to acting as couriers and collecting cash from victims of the scam. After pleading guilty to Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1349/2326, two of the co-defendants were sentenced to thirty months incarceration followed by three years federal supervised release and restitution.

Another case that was recently disposed of by the Court, is *United States v. Whitfield*, 1:18-cr-00046-WES-PAS. In *Whitfield*, the defendant pled guilty to one count of Conspiracy to Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1349 and 2326, nine counts of Mail Fraud, in violation of 18 U.S.C. §§ 1341 and 2326, and twenty-eight counts of Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2326. The defendant in *Whitfield*, personally targeted the elderly under the pretext that they had won money in sweepstakes and or the lottery, inducing the victims to pay money, described as fees and taxes, in advance of receiving their purported lottery winnings by sending money by United States mail or wire transfer to the defendant. This was a sophisticated scheme that was undertaken by the defendant in Whitfield. Accordingly, the Court

sentenced the defendant to thirty months incarceration followed by supervised release and restitution.

In this instant case (and in contrast to *Hatcher* and *Whitfield*), defense counsel is requesting sixteen months incarceration, a below guideline range and lower than the period of incarceration than the defendants in *Hatcher* and *Whitfield*, largely in part due to Mr. Audate's lack of a criminal history, his unsophisticated role as a courier/mule, his introduction into the scheme by a family member who preyed upon his mental health/vulnerability, and due to his acceptance of responsibility. Given the mitigating circumstances and differences between Mr. Audate's situation and the aforementioned *Hatcher* and *Whitfield* cases, a term of sixteen months incarceration would promote uniformity and avoid disparate outcomes with similarly offenders.

## IV. CONCLUSION

We concede that sophisticated financial crimes targeting the elderly are morally repugnant. However, we submit that Mr. Audate's case should take into consideration all the sentencing factors outlined by Congress not based solely on the emotion that his crimes elicit or the nature and characteristics of the offenses.

In this case, the purposes of sentencing are achieved by considering the totality of the circumstances. Mr. Audate is a non-violent first-time offender with a support system who poses minimal risk of re-offending. Mr. Audate understands that jail is a certainty, and he understands that it is warranted. Respectfully however, there is little utility, from a practical perspective aside from punishment, to have Mr. Audate serve a within guideline prison sentence.

Based on the foregoing, Mr. Audate respectfully requests that the Court vary from the advisory guideline range and impose a sentence of sixteen months incarceration, followed by a term of supervised release and restitution. Such a sentence is "sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553(a).

Respectfully submitted on this 26th day of Febraury 2024.

Respectfully submitted,

Jean Richard Audate,
By his attorneys

*s/Kensley R. Barrett*
KENSLEY R. BARRETT
Bar No. 8657
Marin & Barrett, Inc.
1000 Chapel View Blvd, Suite 260
Cranston, RI 02920
Phone: (401) 601.8646
Fax: (401) 679.0122
Email:kb@marinbarrettmurphy.com

## CERTIFICATE OF SERVICE

I, do hereby certify that on February 26, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

John McAdams
Assistant United States Attorney
Providence, Rhode Island 02903

*s/Kensley R. Barrett*
KENSLEY R. BARRETT
Bar No. 8657
Marin & Barrett, Inc.
1000 Chapel View Blvd, Suite 260
Cranston, RI 02920
Phone: (401) 601.8646
Fax: (401) 679.0122
Email:kb@marinbarrettmurphy.com

# EXHIBIT B

Gmail

Kensley Barrett <kb@marinbarrettmurphy.com>

# Fwd: Character Letter

1 message

**Eon Smith** <esmith@smithelaw.com> Mon, Feb 26, 2024 at 4:50 AM
To: Kensley Barrett <kb@marinbarrettmurphy.com>

Get Outlook for iOS

**From:** John Settles Jr. <legacybowling@yahoo.com>
**Sent:** Sunday, February 25, 2024 7:19 PM
**To:** esmith@smithelaw.com <esmith@smithelaw.com>
**Subject:** Character Letter

John Settles Jr.
8566 159 Street
Jamaica, NY 11432

February 23, 2024

To Whom it may concern,

My name is John Settles Jr and I serve currently as an ordained Minister in my church. I have known Jean Audate for 36 years. We have grown up literally down the street from one another. Through out our years, we have attended both preschool and elementary school together. The bond that we have created as friends has turned more into that of brothers. He has always been a source of great laughter and a comedic spirit. Growing up primarily with his mom, grandma and brother..he is a person of loyalty,love and protector. He has faced multiple challenges in his life that I've seen him presevere through in order to accomplish goals.

Jean is a person of high intellect and has a great affinity to things of technology…always has. Throughout the years whenever I have called upon Jean for moral support, he has shown himself to always show up as the loyal friend I grew up knowing him to be. In the time I have known him, Jean has been a person of loyalty, love, and honesty.

I know that this situation has truly been one of immense of sorrow and stress for him and has absolutely shown him a higher value of life and respect for what's right. I believe in second chances and firmly believe that a second chance for Jean would not result in disappointment but rather redemption. I pray for leniency and mercy of the court in regards to current situation that Jean Audate is facing.

Sincerely,

John L.Settles Jr.

Sent from Yahoo Mail on Android

# EXHIBIT A

Gmail Kensley Barrett <kb@marinbarrettmurphy.com>

# Fwd: Character letter from Edison perdomo

1 message

**Eon Smith** <esmith@smithelaw.com> Mon, Feb 26, 2024 at 4:51 AM
To: Kensley Barrett <kb@marinbarrettmurphy.com>

Get Outlook for iOS

**From:** Edison Perdomo <edisonperdomo284@yahoo.com>
**Sent:** Friday, February 23, 2024 2:55 PM
**To:** esmith@smithelaw.com <esmith@smithelaw.com>
**Subject:** Character letter from Edison perdomo

Edison perdomo
132-17 95th ave
south Richmond hill NY 11419
edisonperdomo284@yahoo.com
347-320-5755
02/23/2024

Dear , whom it may concern

I am writing this letter in support of my friend, Jean Audate , who has a court date approaching. I have known jean for 24 years and am familiar with his character and integrity.

I met jean during the time we lived in the same building and have since developed a strong friendship with him. In the time that I have known him, I have witnessed firsthand his positive qualities and unwavering moral character.

Jean is a loyal and dependable friend who has always been there for me in times of need. He is known for his kindness, generosity, and willingness to help others without hesitation.

Jean possesses a strong sense of integrity and honesty in all aspects of his life. He is a hardworking individual who approaches challenges with determination and a positive attitude. His compassion for others and his dedication to doing what is right are truly commendable.

I recall a time when Jean went out of his way to help a neighbor in need, demonstrating his selflessness and willingness to lend a hand without expecting anything in return. His actions speak volumes about his character and his genuine desire to make a positive impact on those around him.

I believe that jeans character and moral fiber make him a trustworthy and upstanding individual. I am confident that he will approach his court date with the same integrity and honesty that he exhibits in his daily life.

In conclusion, I wholeheartedly support jean and stand by his side during this challenging time. I am confident that his positive attributes and strong character will be evident to all involved in the legal proceedings. Please feel free to contact me if you require any further information or clarification.

Sincerely,
Edison perdomo

Sent from Yahoo Mail for iPhone